## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CELEBRATION CHURCH, INC.**          **CIVIL ACTION**

**VERSUS**                            **CASE NO. 14-1050**

**UNITED NATIONAL INSURANCE CO.**     **SECTION: G(4)**

## ORDER

Before the Court are Plaintiff Celebration Church, Inc.'s ("Celebration Church") "Motion for Partial Summary Judgment on the Issue of Coverage"[1] and Defendant United National Insurance Company's ("UNIC") "Motion for Summary Judgment."[2] Having considered the motions, the memoranda in support and in opposition, the record, and the applicable law, the Court will grant summary judgment on all claims in favor of UNIC.

## I. Background

### A.   *Factual Background*

Celebration Church is the owner of a commercial property located in Metairie, Louisiana that, between October 1, 2012 and October 1, 2013, was insured by UNIC under an all-risk commercial property insurance policy (the "Policy").[3] The Policy insured against direct physical loss to covered property unless the loss was specifically excluded by the Policy.[4] One such exclusion, titled "Theft of Attached Metals or Alloys and Associated Vandalism Total Exclusion" ("Precious Metals Exclusion"), reads as follows:

---

[1]  Rec. Doc. 28.

[2]  Rec. Doc. 35.

[3]  Rec. Doc. 28-10 at p. 1.

[4]  *Id.*

B.    EXCLUSIONS

    2.    We will not pay for loss or damage caused by or resulting from any of the following: . . .

        m.    Theft or attempted theft, and any vandalism caused by or resulting from such theft or attempted theft, of any copper, aluminum or any other precious or semi-precious alloys or metals that are attached or connected to buildings or structures, or are part of any machinery or equipment attached or connected to buildings or structures.[5]

After Hurricane Katrina, Celebration Church underwent a renovation that included the installation of seven rooftop air conditioning units.[6] In March of 2013, Celebration Church discovered that thieves had stolen the condensers in each of the seven roof top units.[7] The theft caused the loss of air conditioning condenser coils, presumably made of copper, aluminum, or another precious metal, though Plaintiff contends that the exact metal involved is disputed.[8] The theft also caused the loss of refrigerant and other components.[9] After the theft, Plaintiff submitted

---

[5]  Rec. Doc. 52 at p. 2; *see also* Rec. Doc. 30 at p. 73. The Court notes that, in its opposition to Plaintiff's motion for partial summary judgment, as well as in its own motion for summary judgment, UNIC initially stated that the Precious Metals Exclusion excludes "damage or loss resulting directly or indirectly from theft . . . ." Rec. Docs. 38 at p. 4; 35-1 at p. 2. In a reply memorandum to its motion for summary judgment, UNIC clarified that it had mistakenly cited a different section of the applicable policy, and agreed that the relevant portion of the Policy is the one quoted herein.

[6]  Rec. Doc. 28-10  at p. 1.

[7]  *Id.* at p. 2.

[8]  Rec. Docs. 28-10 at p. 4; 38-1 at pp. 4–5.

[9]  Rec. Docs. 28-10 at p. 2; 38-1 at pp. 4–5.

a claim to UNIC for $71,894.40 to cover the damage sustained to the units.[10] Citing the Precious

Metals Exclusion, on April 18, 2013, UNIC sent a letter to Plaintiff denying the claim.[11]

**B.**     *Procedural Background*

Plaintiff filed suit in the 24th Judicial District Court for the Parish of Jefferson on April 29,

2014 seeking damages for the cost of replacing the condensers, as well as exemplary damages and

attorney's fees under Louisiana Revised Statutes 22:1892 and 22:1973.[12] Defendant removed to this

Court on May 8, 2014, alleging diversity jurisdiction.[13] On March 7, 2015, Plaintiff filed a motion

for partial summary judgment on the issue of coverage.[14] On March 18, 2015, Defendant filed an

opposition,[15] and on March 31, 2015, Plaintiff filed a reply.[16]

Defendant filed its own motion for summary judgment on March 17, 2015.[17] Plaintiff filed

an opposition on March 30, 2015,[18] and Defendant filed a reply brief on March 31, 2015.[19] On

November 24, 2015, UNIC also filed a motion for partial summary judgment on the issue of

---

[10]   *Id.*

[11]   Rec. Docs. 28-10 at p. 2; 38-1 at p. 5.

[12]   Rec. Doc. 1-1 at pp. 1–2.

[13]   Rec. Doc. 1.

[14]   Rec. Doc. 28.

[15]   Rec. Doc. 38.

[16]   Rec. Doc. 50.

[17]   Rec. Doc. 35.

[18]   Rec. Doc. 48.

[19]   Rec. Doc. 52.

Plaintiff's bad faith claims against it,[20] as well as a motion *in limine* to exclude the testimony of bad faith experts.[21] Because the Court herein grants summary judgment in favor of UNIC on the issue of coverage, it need not reach the issues raised in either of the later-filed motions.

## II. Parties' Arguments

A.   *Plaintiff's Motion for Partial Summary Judgment*

   1.   **Plaintiff's Arguments in Support of Partial Summary Judgment**

In its motion for summary judgment, Plaintiff claims that UNIC's insurance policy specifically included coverage for equipment breakdown, defining equipment as including property covered by the policy used for the "generation, transmission or utilization of energy."[22] Plaintiff acknowledges that the Policy included the Precious Metals Exclusion, but claims that the exclusion did not apply to liquid or to equipment—only to the theft or attempted theft of precious metals that may be contained in equipment.[23] Celebration Church argues that the theft in March 2013 undisputedly involved both liquid refrigerant, contained in each of the missing air conditioning condenser coils, as well as the coils themselves.[24] According to Plaintiff, two mechanical contractors and the Plaintiff's expert mechanical engineer all agreed that the condenser coils constituted "equipment."[25]

---

[20]  Rec. Doc. 71. The Court notes that UNIC's "Motion for Summary Judgment," Rec. Doc. 35, had already urged the Court to dismiss Plaintiff's bad faith claims against it.

[21]  Rec. Doc. 72.

[22]  Rec. Doc. 28-1 at p. 2.

[23]  *Id.*

[24]  *Id.* at p. 3.

[25]  *Id.*

Celebration Church argues that the value of the refrigerant ("R22") taken undisputedly exceeded the amount of any scrap metal taken, arguing that the cost of the R22 was estimated to be about $15 to $20 per pound.[26] Because each air conditioning unit contained 25 to 50 pounds of R22, Plaintiff avers, the value of the R22 taken ranged from $375 to $1,000 depending on the size of the unit.[27] By comparison, Plaintiff contends, the scrap value of copper was about $2 per linear foot, and only about 100 linear feet of copper, if indeed the coils were made of copper, was taken from each unit.[28] According to Celebration Church, there was therefore potentially about $200 of scrap metal taken from each unit, a sum exceeded by the value of the refrigerant taken.[29] Furthermore, Plaintiff contends, all witnesses agreed that the thieves had left copper behind in an amount that exceeded the value of any scrap metal taken.[30]

Next, Celebration Church argues that UNIC's third party administrator, Global Indemnity Group, hired Mariposa Ltd. ("Mariposa") to adjust the claim, and that Mariposa in turn hired an independent adjuster, Jonathan Kimball ("Kimball") to adjust the claim.[31] According to Plaintiff, Kimball never stated in his initial report that the coils were made of copper, aluminum, or other precious metals, and although he acknowledged that the missing condenser coils contained refrigerant, he did not report any as missing.[32] Furthermore, Celebration Church avers, Kimball

---

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.* at p. 4.

[31] *Id.*

[32] *Id.*

admitted that he did not conduct any investigation regarding whether the coils could have constituted "equipment" under the Policy.[33] Celebration Church contends that due to the issue of whether the coils could have constituted equipment, Kimball never recommended that UNIC deny Plaintiff's claim.[34] Instead, Plaintiff avers, Kimball indicated in his report that the claim presented a "coverage issue" under the Policy, but either Mariposa or UNIC later revised his report to deny the claim based upon the Precious Metals Exclusion, even though no definitive evidence had been submitted regarding the composition of the coils at that point.[35] Celebration Church contends that UNIC later hired an expert mechanical contractor, Michael Kelly ("Kelly") to determine the composition of the coils, and that although Kelly contends that the coils were made of copper and/or aluminum, he also acknowledged that the missing condenser coils contained refrigerant.[36]

Celebration Church alleges that based on the above undisputed facts, as well as Louisiana law regarding the interpretation of insurance policies, it is entitled to summary judgment declaring coverage under the Policy because: "1) the Precious Metals Exclusion is inapplicable to liquid refrigerant; 2) the Precious Metals Exclusion is inapplicable to equipment; and/or, alternatively, 3) given the existence of multiple, reasonable interpretations of the Exclusion, the Precious Metals Endorsement should be declared ambiguous, and construed in favor of coverage."[37] According to

---

[33] *Id.*

[34] *Id.* at p. 5.

[35] *Id.*

[36] *Id.*

[37] *Id.* at p. 6.

Celebration Church, Louisiana law states that insurance policies should be interpreted to effect coverage rather than deny it, and thus exclusions should be narrowly construed.[38]

Plaintiff maintains that the All-Risk Policy clearly affords coverage of the theft of liquid refrigerant and/or equipment,[39] and that the burden of proving the Precious Metals Exclusion rests on UNIC.[40] Celebration Church claims that UNIC cannot meet its burden of proving that the Precious Metals Exclusion applies to the theft of liquid refrigerant or equipment, noting that UNIC denied its claim "[w]ith little or no investigation."[41] Celebration Church argues that every witness deposed at the time its motion was filed had unequivocally stated that not only were the condenser coils missing, but also the liquid refrigerant contained therein.[42] Moreover, Celebration Church contends, "the evidence was undisputed that the thieves were not seeking precious metals, but refrigerant, as the value of the refrigerant taken was much greater than any scrap copper or aluminum that was taken."[43]

Celebration Church also argues that because the theft undisputedly involved "equipment," the Precious Metals Exclusion does not apply to exclude coverage of its claim.[44] Plaintiff claims that two of its mechanical contractors and one of its experts all concluded that the stolen coils constituted "equipment" covered by the Policy, but that, "[r]emarkably," UNIC's expert report failed to address

---

[38] *Id.* at p. 7 (citing *Breland v. Schilling*, 550 So. 2d 609, 610 (La. 1989)).

[39] *Id.* at p. 9.

[40] *Id.* at p. 8.

[41] *Id.* at p. 9.

[42] *Id.* at p. 10.

[43] *Id.* at p. 11.

[44] *Id.* at p. 12.

whether the coils constituted equipment.[45] This issue, according to Plaintiff, caused UNIC's adjuster, Kimball, not to recommend the denial of coverage in his first report.[46]

Finally, Plaintiff contends that, in the alternative, the Precious Metals Exclusion is ambiguous and should be constructed in favor of coverage.[47] Celebration Church argues that UNIC has misconstrued the Precious Metals Exclusion to exclude any machinery or equipment whenever it contains the least amount of copper, aluminum, or other precious metals, and that such an interpretation would "completely eviscerate coverage under the Policy."[48] Plaintiff contends that the Louisiana Supreme Court has held similarly overbroad provisions to be ambiguous, with the ambiguous provision construed in favor of coverage.[49] Specifically, Plaintiff relies on a Louisiana Supreme Court case, *Doerr v. Mobil Oil Corp.*, in which Plaintiff contends the court found that a "total pollution exclusion" in a commercial general liability policy was so broadly worded that it could apply to "anything from the release of chlorine gases by a conglomerate chemical plant to the release of carbon monoxide from a small business owner's delivery truck," or even a slip and fall in a puddle of spilled gasoline at a gas station.[50] According to Celebration Church, the Louisiana Supreme Court found that such a broad construction of the wording would result in absurd consequences that would operate to defeat coverage, a result contrary to Louisiana insurance law,

---

[45] *Id.* at p. 13.

[46] *Id.*

[47] *Id.* at p. 15.

[48] *Id.*

[49] *Id.* at p. 16 (citing *Doerr v. Mobil Oil Corp.*, 00-0947 (La. 12/19/00); 774 So. 2d 119).

[50] *Id.*

and that therefore the provision was ambiguous and should not be construed to deny coverage.[51] Plaintiff avers that this Court should similarly find that the Precious Metals Exclusion is overbroad and susceptible to different meanings, and should therefore be construed in favor of coverage.[52]

### 2.   Defendant's Arguments in Opposition to Partial Summary Judgment

Defendant begins by stating that it does not believe there is a genuine issue of material fact in this case, and notes that it has filed its own motion for summary judgment seeking dismissal of Plaintiff's claims.[53] Next, Defendant argues that the following individuals all agreed that the condenser coils that had been stolen contained copper and/or aluminum: (1) Elizabeth Walker, the investigating officer who responded to the theft; (2) Rory Scallan, a mechanical contractor who specializes in air conditioning and is familiar with the units at issue; (3) Kenny Peffer, the owner of a company that repairs commercial air conditioning systems; and (4) Michael A. Kelly, an expert in the field of air conditioning and refrigeration who reviewed the owner's manuals and manufacturers specifications for the unit models at issue.[54]

UNIC argues that the Precious Metal Exclusion is clear and unambiguous, and where the language in a policy is clear, unambiguous, and expressive of the intent of the parties, the policy must be enforced as written.[55] UNIC claims that it is undisputed that condenser coils were taken from each air conditioning unit at issue, and further undisputed that those condenser coils contained

---

[51] *Id.*

[52] *Id.*

[53] Rec. Doc. 38 at p. 1 n.1.

[54] *Id.* at pp. 3–4.

[55] *Id.* at pp. 5–6 (citing *Dean v. State Farm Mut. Auto Ins. Co.*, No. 2007-0645 (La. App. 4 Cir. 1/16/08); 975 So. 2d 126, 131–32; *LeBlanc v. Davis*, 223 So. 2d 862 (La. 1969)).

copper and aluminum.[56] According to UNIC, Plaintiff's arguments regarding the theft of liquid refrigerant and equipment "raise immaterial and tangential issues that distract from the undisputed fact that the claimed damage arose from the theft of copper and aluminum (and resultant vandalism) that was part of equipment attached to the insured building, and is thus excluded from the Policy."[57]

According to UNIC, the question at issue is whether the Precious Metals Exclusion bars coverage for the loss claimed, which was caused by the "actual, undisputed theft of copper and aluminum (regardless of the thieves' intent) that was part of building-attached equipment/machinery (whether or not other material was concurrently stolen), and resultant vandalizing of the units."[58] UNIC argues that the thieves' state of mind or the nature of their "intended booty" is immaterial because they stole at least 100 linear feet of copper from the air conditioners.[59] Moreover, UNIC contends, this resulted in the clear vandalizing and damaging of those units, for which Plaintiff sought payment from the insurer.[60]

Defendant avers that even if one assumed that the thieves were targeting the freon refrigerant, the fact that they stole copper in taking the condenser coils from every unit would bring the damage under the exclusion regardless of the mental state of the thieves.[61] Defendant argues that, although the thieves' intent was immaterial, there is nevertheless "no evidentiary support for the Plaintiff's speculative and dubious assertions that freon, and not copper/aluminum, was what the

---

[56] *Id.* at p. 7.

[57] *Id.*

[58] *Id.* at p. 8.

[59] *Id.*

[60] *Id.* at p. 9.

[61] *Id.*

thieves intended to sell on the black market."[62] In particular, UNIC argues, Rory Scallan, a mechanical contractor specializing in air conditioners, testified that once the condenser coils were cut, any freon would have immediately evaporated into gas, and therefore to actually steal refrigerant, the thieves would have needed to use time-consuming, specialized equipment to remove the freon under pressure.[63] UNIC alleges that Plaintiff has provided no evidence that the thieves intended to commit such an elaborate scheme, as opposed to the commonplace crime of stealing precious metals, for which the insurer excluded coverage.[64]   UNIC also contends that, although Plaintiff argues that some copper was "left behind," that fact is irrelevant because a theft of copper and aluminum "does not require that every last piece of copper be taken in order to qualify as a 'theft.'"[65]

Finally, UNIC argues that the Exclusion is not "ambiguous" and contests Plaintiff's assertion that UNIC "should have written the provision to exclude the theft of machinery or equipment *if* it contained any copper, aluminum or other precious metals."[66] UNIC argues that the exclusion was not intended to be so narrow, and was aimed at excluding "*damage or loss*" arising from the theft.[67] UNIC argues that Celebration Church's interpretation would require coverage of the complete destruction of an air conditioning unit during the theft of copper unless the thieves managed to

---

[62] *Id.*

[63] *Id.* at p. 10.

[64] *Id.* at p. 11.

[65] *Id.*

[66] *Id.*

[67] *Id.* at p. 12.

extract *only* precious metal while committing their crime.[68] UNIC argues that such a result would be absurd; if that were the intent, UNIC claims, then the Exclusion should have stated that only the value of the loss of the precious metal itself would be excluded from coverage.[69]

### 3.     Plaintiff's Arguments in Further Support of Partial Summary Judgment

In reply, Celebration Church argues that UNIC bears the burden, which it has not met, of proving that the loss or damage resulted from the theft or attempted theft of copper, aluminum, and/or other precious/semi-precious metals.[70] Even if UNIC did prove so, Plaintiff contends, it is undisputed that the loss resulted from the theft of refrigerant and equipment, which are not subject to the Exclusion.[71] Celebration Church re-avers that the Precious Metals Exclusion does not apply to the theft of liquid refrigerant or to the theft of equipment, and that all witnesses have agreed that the theft included liquid refrigerant, which was more valuable than any scrap metal taken.[72] Plaintiff contends that UNIC's argument that refrigerant "may have evaporated into gas" is immaterial because "[w]hether taken or disposed, the missing items undisputedly included refrigerant, and the Precious Metals Exclusion clearly does not apply to liquid (or gas)."[73]

Plaintiff contends that UNIC has offered no evidence disputing that the theft involved equipment, and argues that the Exclusion, as written, applied to the theft of metal that is part of

---

[68] *Id.*

[69] *Id.*

[70] Rec. Doc. 50 at p. 1.

[71] *Id.* at p. 2.

[72] *Id.*

[73] *Id.* at p. 3.

12

equipment, but not to the equipment itself.[74] Celebration Church argues that because an extensive amount of scrap metal was undisputedly left behind, which was more valuable than any scrap metal potentially taken, the loss could have resulted from the theft of equipment, and not the theft of scrap metal.[75]

Furthermore, Celebration Church alleges, UNIC has not met its burden of definitively proving the composition of the coils.[76] Plaintiff argues that one expert relied upon by UNIC—Kenny Peffer ("Peffer")—stated that the coils likely contained copper or aluminum, but he could not be sure of their composition.[77] Furthermore, Plaintiff contends, Peffer questioned the accuracy of the manuals produced by UNIC's expert, Michael Kelly, as possibly pertaining to the replacement units installed by Celebration Church, and not the units actually replaced.[78] Plaintiff avers that, in addition, although Rory Scallan ("Scallan") testified that the coils were made of copper, aluminum and/or steel, no foundation was laid by UNIC showing that Scallan had the requisite personal knowledge to attest to that fact.[79] Celebration Church argues that even assuming UNIC had met its burden, the loss would still be covered under the Policy because the theft of refrigerant and/or equipment is covered under the Policy.[80] Therefore, according to Plaintiff, in the absence of an anti-concurrent clause stating that "[s]uch loss or damage is excluded regardless of any other cause or

---

[74] *Id.*

[75] *Id.*

[76] *Id.* at p. 4.

[77] *Id.*

[78] *Id.*

[79] *Id.*

[80] *Id.* at p. 5.

event that contributes concurrently or in any sequence to the loss," at best there could be two covered causes of loss (refrigerant and equipment) and one excluded cause of loss (copper/aluminum), and coverage would be found where there are both covered and uncovered causes of loss.[81]

Finally, Plaintiff argues that the plain wording of the Exclusion dictates that its application is limited, and whenever a theft involves items other than precious or semi-precious metals, the Exclusion is wholly inapplicable.[82]

## B.    *Defendant's Motion for Summary Judgment*

### 1.    **Defendant's Arguments in Support of Summary Judgment**

Defendant begins with some of the same arguments included in its opposition to Plaintiff's motion for partial summary judgment, arguing that the undisputed material facts support its claim that the damages resulting from the theft of the condenser coils are not covered by the Policy.[83]

Next, UNIC argues that Plaintiff's claims for bad faith and fair dealing should also be dismissed, because under Louisiana law, an insured who claims entitlement to penalties and attorney fees from an insurer has the burden of proving the insurer received satisfactory proof of loss as a predicate to a showing that the insurer was arbitrary, capricious, or without probable cause, and also has to show a lack of compliance within the applicable statutory time periods.[84] UNIC argues that the Fifth Circuit has held that the statutes at issue—La. R.S. 22:1982 and La. 22:1973—are penal

---

[81]   *Id.*

[82]   *Id.*

[83]   Rec. Doc. 35-1 at pp. 4–6.

[84]   *Id.* at p. 6 (citing *Maloney Cinque, L.L.C. v. Pacific Inc. Co., Ltd.*, 89 So. 3d 12 (La. App. 4 Cir. 2012), *writ denied*, 92 So. 3d 345 (La. 2012)).

in nature and that they should therefore be strictly construed and should not be invoked when the insurer has a reasonable basis for denying coverage.[85] UNIC argues that it never received "satisfactory proof of loss," because there is no covered loss under the Policy, and that even if coverage were somehow found in this case, the fact that there is a dispute as to the application of a clause excluding coverage bars Plaintiff from being entitled to statutory penalties or attorney fees.[86]

Defendant argues that La. R.S. 22:1892 requires insurers to initiate loss adjustment of a property damage claim within fourteen days of notification of loss, and that in this case, it is undisputed that the initial inspection was undertaken within five days.[87] Therefore, UNIC claims, Defendant has met its statutory requirements, and all of Plaintiff's claims against Defendant, including those for both breach of contract and bad faith, should be dismissed.[88]

### 2.    Plaintiff's Arguments in Opposition to Summary Judgment

In opposition, Plaintiff repeats verbatim many of the arguments made in its motion for partial summary judgment. Plaintiff also re-urges its argument that UNIC initially relied erroneously on language contained elsewhere in the Policy but inapplicable to the Precious Metals Exclusion: namely, language stating that UNIC would not pay for loss or damage "caused directly or indirectly" by theft, and an anti-concurrent clause stating that "[s]uch loss or damage is excluded regardless of

---

[85] *Id.* at p. 7 (citing *Matter of Hannover Corp. of Am.*, 67 F.3d 70, 74 (5th Cir. 1995)).

[86] *Id.* (citing *Smith v. Ranger Ins. Co.*, 301 So. 2d 673 (La. App. 1974); *Rogers v. Samedan Oil Corp.*, 308 F.3d 477 (5th Cir. 2002)).

[87] *Id.*

[88] *Id.* at p. 8.

any other cause or event that contributes concurrently or in any sequence to the loss."[89] Without either the directly/indirectly or anti-concurrent clauses, Celebration Church argues, UNIC cannot defeat its coverage obligations under the Policy, because even if the loss of copper or aluminum were to be excluded by the Policy, the theft of refrigerant and/or equipment would be covered, and coverage must be found where there are both covered and uncovered causes of loss.[90]

In the alternative, Plaintiff argues, because the Precious Metals Exclusion could be construed as inapplicable to refrigerant and/or equipment, the Precious Metals Exclusion is ambiguous and should be construed in favor of coverage.[91] Celebration Church argues that, in fact, UNIC should be liable for bad faith because it misconstrued the Exclusion and mishandled Plaintiff's claims.[92] For example, Celebration Church points to the expert report of an insurance professional, Louis Fey, who Celebration Church contends opined that UNIC had committed bad faith in misconstruing the Exclusion to apply to a refrigerant and to the coils, if considered equipment.[93] Furthermore, Plaintiff contends, Kimball mishandled the claim by failing to report the refrigerant contained in the condenser coils as missing, failing to investigate whether the coils could have constituted equipment under the Policy, and failing to seek a professional opinion regarding whether the coils could have constituted equipment.[94] According to Plaintiff, UNIC committed bad faith by unilaterally revising

---

[89] Rec. Doc. 48 at p. 3.

[90] *Id.* at p. 4.

[91] *Id.*

[92] *Id.*

[93] *Id.*

[94] *Id.* at pp. 18–19.

Kimball's report to deny the claim based upon the Precious Metals Exclusion, even though no definitive evidence had been submitted regarding the composition of the coils at that point.[95]

### 3.      Defendant's Arguments in Further Support of Summary Judgment

In reply, Defendant argues that although it initially committed an error by mistakenly citing the "directly/indirectly" and "anti-concurrent clause" noted by Plaintiff, those errors were insignificant for the purposes of deciding the pending motions.[96] In fact, UNIC contends, the "concurrent clause" language mistakenly cited is not referenced or relied upon by Defendant in the body of its memorandum in support of its motion for summary judgment, and was instead raised briefly only in one section of UNIC's opposition to Plaintiff's motion for partial summary judgment, "as a retort to Plaintiff's specious claim that (as best Defendant can interpret Plaintiff's argument) the Exclusion is inapplicable where 'equipment' or freon refrigerant are also taken during a theft of copper/aluminum."[97] Similarly, UNIC avers, it is irrelevant that it had mistakenly cited the "indirectly causing" language from an inapplicable portion of the Policy, because Defendant never employed any arguments about "indirect" causation, and instead has specifically argued that Plaintiff's claimed loss or damaged was caused directly by the theft of copper and aluminum.[98]

Defendant next contends that Plaintiff "has inappropriately and misleadingly parsed and twisted the words of the Policy to concoct a coverage that does not exist."[99] Specifically, UNIC

---

[95] *Id.* at p. 19.

[96] Rec. Doc. 52 at p. 2.

[97] *Id.* (citing Rec. Doc. 36 at pp. 8–9).

[98] *Id.* at p. 3.

[99] *Id.* at p. 4.

avers that Plaintiff has created a false dispute regarding whether the stolen condenser coils "constituted equipment" and whether the Exclusion applies to equipment.[100] However, according to Defendant, the Exclusion specifically contemplates and references equipment, and it is not relevant whether the condenser coils or the air conditioning units of which they are a part constituted "equipment," because the Policy excludes coverage from "*damage* or *loss* that is *caused by* or *resulting from* the theft of [precious metals/alloys] that are *part of any machinery or equipment attached to or connected to buildings or structures.*"[101] Thus, UNIC asserts, it is "self-apparent" that the provision cannot be meant to cover only the loss of precious metals themselves, and that such an interpretation would render the related vandalism clause purposeless.[102]

UNIC further argues that it is undisputed, based on the reports of Plaintiff's own witnesses, that the stolen coils were made of copper or aluminum.[103] Defendant argues that Plaintiff has misrepresented the testimony of Kenny Peffer, arguing that in context, it is clear that Peffer, who replaced the damaged units, clearly stated that it was "definitely" a "fact" that the damaged models he removed from the roof had condenser coils made either of copper or aluminum.[104] Similarly, UNIC avers, Plaintiff relies on a fragment of a sentence in UNIC expert Michael Kelly's report stating that the coils contained refrigerant, but omits the end of Kelly's sentence stating that the air

---

[100] *Id.*

[101] *Id.*

[102] *Id.*

[103] *Id.* at p. 6.

[104] *Id.*

18

conditioner models in question contained coils made of copper and aluminum.[105] Finally, UNIC repeats its arguments that the Exclusion at issue is not ambiguous.[106]

## III. Law and Analysis

### A.    Legal Standard on a Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[107] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[108] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[109] If the record, as a whole, could not lead a rational trier of fact to find for the non-moving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[110] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[111]

---

[105] *Id.* at p. 7.

[106] *Id.* at pp. 8–9.

[107] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[108] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[109] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[110] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[111] *See, e.g.*, *Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[112] Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[113] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[114] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[115] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[116]

On cross-motions for summary judgment, a court examines each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party.[117] "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed."[118] Nonetheless, cross-motions for summary judgment may be probative

---

[112] *Celotex*, 477 U.S. at 323.

[113] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.1994), cert. denied, 513 U.S. 871 (1994).

[114] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012), citing *Anderson*, 477 U.S. 242 at 248–49.

[115] *Little*, 37 F.3d at 1075.

[116] *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2).

[117] *White Buffalo Ventures, LLC v. Univ. of Texas at Austin*, 420 F.3d 366, 370 (5th Cir. 2005).

[118] *Joplin v. Bias*, 631 F.2d 1235, 1237 (5th Cir. 1980).

of the absence of a factual dispute when they reveal a basic agreement concerning what legal theories and material facts are dispositive.[119]

**B.      *Applicable Law on Interpretation of Insurance Policies***

In *Huggins v. Gerry Lane Enterprises, Inc.*, the Louisiana Supreme Court set forth the principles to be applied when interpreting insurance contracts, stating that:

> An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent. Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning.[120]

Generally, interpretation of an insurance contract concerns a legal question that can be resolved on a motion for summary judgment.[121] Liability insurance policies are interpreted to provide coverage rather than deny coverage.[122] "However, it is well-settled that unless a statute or public policy dictates otherwise, the insurers may limit liability and impose such reasonable conditions or limitations upon their insureds."[123] Although unambiguous provisions limiting liability must be given effect, the insurer bears the burden of proving that a loss falls within a policy exclusion.[124]

---

[119] *Bricklayers, Masons & Plasterers Int'l Union of Am., Local Union No. 15, Orlando, Fla. v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975).

[120] 2006-2816 (La. 5/22/07); 957 So.2d 127, 129 (citations omitted).

[121] *Cutsinger v. Redfern*, 2008-2607 (La. 5/22/09); 12 So. 3d 945, 949.

[122] *Supreme Servs. & Specialty Co. v. Sonny Greer, Inc.*, 2006-1827 (La. 5/22/07); 958 So. 2d 634, 638.

[123] *Id.* at 638–39.

[124] *Id.* at 639.

Each provision in an insurance policy must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.[125] "A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective."[126] If, after applying the general rules of contract interpretation, some ambiguity remains, the ambiguous contractual provision is to be construed against the insurer.[127] Although equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer, the principle of strict construction applies "only if the ambiguous policy provision is susceptible to two or more *reasonable* interpretations; for the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable."[128] However, if the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written.[129] The determination of whether a contract is clear or ambiguous is a question of law.[130]

## C.    *Analysis*

Both Celebration Church and UNIC urge the Court to find that there is no genuine issue of material fact and to grant summary judgment in their favor. Each accuses the other of presenting red herrings to distract the Court from the allegedly clear-cut question of contractual interpretation

---

[125]  *See* La. Civ. Code art. 2050; La. R.S. § 22:881 ("Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy.").

[126]  La. Civ. Code art. 2049.

[127]  *Cadwallader v. Allstate Ins. Co.*, 2002-1637 (La. 6/27/03); 848 So. 2d 577, 580 (citing La. Civ. Code art. 2056).

[128]  *Id.* (citing *Carrier v. Reliance Ins. Co.*, 99-2573, p. 11 (La. 4/11/00); 759 So. 2d 37, 43).

[129]  *Id.* (citing *Succession of Fannaly v. Lafayette Ins. Co.*, 01-1355, p. 4 (La. 1/15/02); 805 So. 2d 1134, 1137).

[130]  *Id.* (citing *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911, p. 5 (La. 1/14/94); 630 So. 2d 759, 763).

before it. The Court begins by assessing Plaintiff's motion for summary judgment, which asks the Court to find in its favor on the issue of coverage, and in the alternative to find that the contractual language was ambiguous and therefore ought to be construed in favor of coverage. If the language is not ambiguous, however, its meaning may be determined as a matter of law, and summary judgment may be granted in favor of either moving party, unless disputed facts which could preclude summary judgment remain.

### 1.       Ambiguity

Plaintiff contends that, if the Court does not find in its favor that as a matter of law the insurance policy required UNIC to cover the losses arising from the damage to the air-conditioning units, the Court should find that because the Precious Metals Exclusion is susceptible to multiple interpretations, the Exclusion should be declared ambiguous and narrowly construed in favor of coverage.[131] Specifically, Plaintiff alleges that UNIC's interpretation is "so overbroad that it would completely eviscerate coverage under the Policy" because UNIC would read the Exclusion to apply to any loss if it could be shown that there was an "'attempted theft' of .01% copper, aluminum, and/or other precious metals."[132] Plaintiff goes on to speculate that, in a hurricane event, UNIC could deny coverage if it was shown that a breaker box was open with even a single copper electrical wire, which could be construed as an "attempted theft" of copper.[133] In reply, UNIC denies that the policy could be read so broadly; according to UNIC, a "hurricane loss" is a different category than a theft or attempted theft, as would be revealed by an investigation.[134] UNIC, however, accuses Plaintiff

---

[131] Rec. Doc. 48 at p. 16.

[132] *Id.* at p. 17.

[133] *Id.*

[134] Rec. Doc. 52 at p. 9.

of misconstruing the Exclusion such that it would apply only to the value of the scrap metal taken in a theft, and not to any other damage or loss arising out of the theft or vandalism.

The Court agrees that it would take a considerable stretch of the imagination for one to read the Precious Metals Exclusion as so broad that damage caused by a hurricane could be excluded as constituting an "attempted theft." The Court also finds, although Plaintiff has not explicitly made the argument that UNIC alleges it has, that the Policy cannot be read to exclude coverage for only the exact cost of any stolen metal, while maintaining coverage for all other related losses or damage incurred in the pursuit of such a theft.

However, UNIC argues that the intent of the thieves is wholly immaterial—according to UNIC, even if the thieves were targeting the freon refrigerant, the fact that they stole copper in taking the condenser coils from every unit would bring the damage under the exclusion regardless of the mental state of the thieves.[135] This interpretation also borders on too extreme. UNIC provides no limiting principle, and thus it is easy to imagine a scenario in which, as Plaintiff avers, stolen copper, aluminum, or another precious or semi-precious metal ("Excluded Metal") makes up such an insignificant portion of stolen property, and thus is so obviously not the aim of a theft or attempted theft, that it is only by happenstance that such materials are stolen. The "theft . . . of any copper, aluminum or any other precious or semi-precious alloys or metals" cannot reasonably be interpreted to include the theft of any object whatsoever (or, in the case of the Exclusion at issue, any machinery or equipment attached or connected to buildings or structures) that contains even the barest traces of an excluded metal or alloy.

---

[135]  Rec. Doc. 38 at p. 9.

Even though both parties take extreme positions on the meaning of the Exclusion, differing interpretations of the scope of coverage do not create an ambiguity where the plain language of the contract at issue speaks for itself. Although equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer, the principle of strict construction applies "only if the ambiguous policy provision is susceptible to two or more *reasonable* interpretations; for the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable."[136] Furthermore, "[t]he judicial responsibility in interpreting insurance contracts is to determine the parties' common intent.[137] An insurance policy "should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion."[138] Therefore, the Court need not credit the alternative interpretations provided by Plaintiff and Defendant, which at their logical extremes are unreasonable, in order to find an ambiguity in plain language. Nor must it find that the contract is ambiguous simply because, after an issue of coverage has arisen, the parties dispute whether the Exclusion should apply.

If, after applying the general rules of contract interpretation, some ambiguity remains, the ambiguous contractual provision is to be construed against the insurer.[139] However, where the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract

---

[136] *Cadwallader v. Allstate Ins. Co.*, 2002-1637 (La. 6/27/03); 848 So. 2d 577, 580 (citing *Carrier v. Reliance Ins. Co.*, 99-2573, p. 11 (La. 4/11/00); 759 So. 2d 37, 43).

[137] *Huggins v. Gerry Lane Enters., Inc.*, 2006-2816 (La. 5/22/07); 957 So. 2d 127, 129.

[138] *Id.*

[139] *Cadwallader v. Allstate Ins. Co.*, 2002-1637 (La. 6/27/03); 848 So. 2d 577, 580 (citing La. Civ. Code art. 2056).

must be enforced as written.[140] Here, the Court finds no ambiguity in the Exclusion at issue. The clear meaning of the language states that any "loss or damage" caused by or resulting from the theft or attempted theft of Excluded Metals that are attached or connected to buildings or structures, or are part of any machinery or equipment attached or connected to buildings or structures, will not be covered by the insurance policy. Despite the exaggerations on both sides, the language is not so broad as to allow UNIC to plausibly deny coverage of hurricane damage on the basis that a claim investigator could, if he wished, contrive a specious argument in order to deny coverage, nor would it allow UNIC to exclude coverage for any theft or attempted theft of an object containing the barest traces of an Excluded Metal. Therefore, the Court finds as a matter of law that the Exclusion at issue is not ambiguous. Next, the Court turns to Plaintiff's arguments that, as a matter of law, the Precious Metals Exclusion does not bar coverage for the theft at issue because it also involved liquid refrigerant and equipment.

### 2.    Scope of Coverage

Having determined that the Exclusion is not ambiguous, the Court must next determine what kinds of claims are intended to be excluded from the Policy's scope of coverage, and whether a genuine issue of material fact on this issue precludes summary judgment. The parties do not appear to dispute what *is* covered by the Policy; instead, they disagree as to what kind of thefts or attempted thefts the Precious Metals Exclusion ought to apply to.

The parties do not cite, nor can the Court find, a definition of "theft" in the Policy, but the definition supplied by Black's Law Dictionary, defining theft as "[t]he felonious taking and removing of another's personal property with the intent of depriving the true owner of it; larceny,"

---

[140] *Id.* (citing *Succession of Fannaly v. Lafayette Ins. Co.*, 01-1355, p. 4 (La.1/15/02); 805 So.2d 1134, 1137).

requires some kind of intent on the part of the taker.[141] It is unclear whether, under that definition, one must presume an intention simply to steal, or specifically to steal a particular object. A common sense interpretation of the contractual words at issue, however, suggests that the Exclusion cannot apply to any "personal property" whatsoever that includes some small amount of an Excluded Metal. Each provision in an insurance policy must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.[142] "A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective."[143] The words "attempted theft" would indeed be overbroad or have little meaning if they were not limited to attempts to steal a particular thing—in this case an Excluded Metal—but could extend to an attempt to steal any "personal property" whatsoever that contains some negligible amount of an Excluded Metal. Therefore, the Court finds that the Exclusion governing "loss or damage caused by or resulting from . . . [t]heft or attempted theft . . . of any . . . [Excluded Metals]" must be limited to situations in which the theft is at least somewhat aimed at obtaining a precious or semi-precious metal, as opposed to a purely incidental acquisition of such.

Plaintiff attempts to argue that, in the absence of an anti-concurrent clause, UNIC must cover the costs of lost refrigerant, which would be covered by the Policy, because such a loss is not strictly defined as the theft of an Excluded Metal.[144] Indeed, Plaintiff argues that "whenever the theft involves items other than precious/semi-precious metals, the Exclusion is ***wholly inapplicable***."[145]

---

[141] Black's Law Dictionary (9th ed. 2009).

[142] *See* La. Civ. Code art. 2050; La. R.S. § 22:881 ("Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy.").

[143] La. Civ. Code art. 2049.

[144] Rec. Doc. 50 at p. 5.

[145] *Id.*

27

This interpretation, however, would render much of the language of the Precious Metals Exclusion meaningless. The Precious Metals Exclusion clearly states that loss or damage caused by or resulting from the "[t]heft or attempted theft, and any vandalism *caused by or resulting from such theft or attempted theft*, of [Excluded Metals] . . ." and explicitly extends to Excluded Metals that are "part of any machinery or equipment." Crediting Plaintiff's interpretation would make both the vandalism provision and the "part of any machinery or equipment" language nonsensical. Because the theft of Excluded Metals that are included within a part or component of machinery or equipment would, as here, often require the vandalism of machinery or equipment in order to reach the desired bounty,[146] UNIC would always be required to pay for all such damage because the exclusion is "wholly inapplicable" when a theft involves "items other than precious or semi-precious metals." It cannot be the case that an Exclusion stating that an insurer will not pay for "loss or damage caused by or resulting from" the theft of an Excluded Metal would require, as Plaintiff seems to imply, that UNIC pay for everything except perhaps the value of any scrap metal taken.

The Court similarly declines to credit Celebration Church's argument that because the theft of liquid refrigerant and equipment "are covered perils under the Policy," "UNIC Cannot Meet Its Burden of Proving That the Precious Metals Exclusion is Applicable to the Theft of Liquid Refrigerant or Equipment."[147] UNIC makes no such argument. Instead, UNIC argues—and the plain language of the Exclusion supports such a reading—that if other "loss or damage" is "caused by" or "result[s] from" the theft or attempted theft of an Excluded Metal, such losses will not be covered

---

[146] A representative of Celebration Church testified that the air conditioning units had been opened. *See* Dep. of Chris Meiller, Rec. Doc. 35-9 at p. 2. The police officer who investigated the theft also stated in an affidavit that the fans on the air conditioners had been unbolted and pushed to the side, and that the copper tubing that connected the condensers to the units was cut. *See* Aff. of JPSO Officer Elizabeth Walker, Rec. Doc. 35-5.

[147] Rec. Doc. 28-1 at p. 9.

by UNIC. In a factually analogous case also involving an insurance policy that excluded coverage for damage "caused by or resulting from" theft, the Fifth Circuit held that although thieves caused nearly $200,000 in total damage to a set of seventeen rooftop air conditioning units when they stole copper condenser coils valued at less than $2,000, because all of the damage was inflicted in furtherance of stealing copper, the theft exclusion in the insurance policy did not require coverage for the loss.[148] Where such losses—however expensive they may be, compared to the value of the copper recovered—are "caused by or result[] from" the theft or attempted theft, or related vandalism, of an Excluded Metal, the Precious Metals Exclusion bars coverage.

Therefore, as a matter of law, the Court finds that the Precious Metals Exclusion excludes coverage for all damages arising from the theft or attempted theft, and related vandalism, of Excluded Metals, and the Court thereby will deny Plaintiff's motion for summary judgment. The question that remains is whether, with regard to UNIC's motion for summary judgment, Plaintiff has raised sufficient evidence of a genuine, disputed issue of material fact to preclude summary judgment in favor of Defendant.

### i.   Composition of the Coils

Although in its own motion for summary judgment, Plaintiff does not appear to seriously question the composition of the stolen coils, in opposition to UNIC's motion, Plaintiff argues that UNIC has not met its burden of proving that the coils were definitively made of copper and/or aluminum.[149] UNIC acknowledges that, in order to deny coverage, it bears the burden of proving a loss falls within a policy exclusion.[150] UNIC claims that it is undisputed that condenser coils were

---

[148] *See Certain Underwriters at Lloyds, London v. Law*, 570 F.3d 574, 579 (5th Cir. 2009).

[149] Rec. Doc. 48 at p. 10.

[150] Rec. Doc. 38 at p. 6; Rec. Doc. 35-1 at p. 5.

taken from each air conditioning unit at issue, and further undisputed that those condenser coils contained copper and aluminum.[151]

On a motion for summary judgment, the party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[152] Here, UNIC does so by arguing that the following individuals all agreed that the condenser coils that had been stolen contained copper and/or aluminum: (1) Elizabeth Walker, the investigating officer who responded to the theft; (2) Rory Scallan, a mechanical contractor who specializes in air conditioning and is familiar with the units at issue; (3) Kenny Peffer, the owner of a company that repairs commercial air conditioning systems; and (4) Michael A. Kelly, an expert in the field of air conditioning and refrigeration who reviewed the owner's manuals and manufacturers specifications for the unit models at issue.[153] The Court finds that the four witnesses cited by Defendant are sufficient to meet Defendant's initial burden of proving the absence of a genuine issue of material fact concerning the composition of the coils.

If a moving party meets its initial burden, to withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[154] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[155] In opposition, Celebration

---

[151] Rec. Doc. 38 at p. 7.

[152] *Celotex*, 477 U.S. at 323.

[153] Rec. Doc. 35-1 at pp. 3–4.

[154] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012), citing *Anderson*, 477 U.S. 242 at 248–49.

[155] *Little*, 37 F.3d at 1075.

Church attempts to undermine the various witnesses relied upon by UNIC. For example, Plaintiff alleges that "Plaintiff's mechanical contractor that replaced the units, Kenny Peffer, said the coils were likely made of copper or aluminum, but he could not say definitely the composition of the coils."[156] Similarly, Celebration Church claims that although UNIC's expert, Michael Kelly, attested that the manuals for the units showed that the coils were made of copper and/or aluminum, when shown the manual specifications purportedly indicating the composition of the coils, Kenny Peffer indicated that the manual may have pertained to the new, replacement units, and not to the older units that were actually replaced.[157]

Drawing all reasonable inferences in favor of the non-moving party and without making credibility determinations, the Court nevertheless finds that Plaintiff attempts to create a "metaphysical doubt" regarding the composition of the coils, but its allegations amount to no more than a "scintilla of evidence." For example, Celebration Church attaches the deposition of Plaintiff's mechanical contractor, Kenny Peffer, arguing that he "could not say definitely the composition of the coils."[158] Reviewing the exhibit attached by Plaintiff, however, the Court notes that Peffer stated that, because he was not an expert in the particular model of air conditioning unit at issue, he did not want to state definitively that the coils were made of *copper*, as he had been asked.[159] Instead, Peffer said, "[T]hey were either made of copper or aluminum . . . . I don't know if the model numbers in question were spiny fans, which are usually aluminum. I really don't know. . . . They were made out

---

[156] Rec. Doc. 48 at pp. 10–11.

[157] *Id.* at p. 11.

[158] *Id.* at pp. 10–11.

[159] Rec. Doc. 48-2 at p. 2 ("Q. . . . Would you agree with me that the condenser coils in all of these model numbers were made of copper coil? A. That I can't – I can't agree or deny, because I'm not really a big Trane person.").

of some type of metal that allows proper heat exchange."[160] Elsewhere in the deposition, as noted by UNIC, Peffer states even more emphatically that "The [air conditioner models] I took out may have been copper, may have been aluminum. But it's one or the other. That's all they have ever used is copper or aluminum. It had to be one or the other. I don't know specifically which. . . . It's one or the other. I definitely don't contest that fact."[161] Plaintiff attempts to create doubt in a situation where its own mechanical contractor stated unequivocally that the coils were made of *either* copper or aluminum, both of which are included under the Precious Metals Exclusion.

Similarly, although Celebration Church argues that UNIC's expert, Michael Kelly, may have relied on the manual for the wrong model of air conditioning unit, the Court finds that the speculation does not raise a genuine issue of material fact regarding whether the stolen coils were in fact made of an Excluded Metal. Even omitting Kelly's testimony, UNIC has nevertheless presented significant evidence that the coils were composed of either copper or aluminum, and Plaintiff has pointed to no evidence whatsoever, nor even a suggestion, of any other material that the coils could have been made of. Indeed, the Court notes that Plaintiff's own expert has stated that "copper and aluminum are the preferred material used to fabricate the heat exchanger in almost all such systems because of their modest cost and superior heat transfer characteristics."[162]

To withstand a motion for summary judgment, Plaintiff must demonstrate a genuine issue of material fact, which is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla

---

[160] *Id.*

[161] Rec. Doc. 52-2 at p. 14.

[162] Aff. of Charles Boyle, Rec. Doc. 28-5 at p. 3.

of evidence."[163] Here, the Court finds that Plaintiff has presented no evidence to contradict Defendant's ample evidence that the stolen condenser coils were made of either copper or aluminum, both of which are named in the Precious Metals Exclusion. UNIC bears the burden of proving that the Precious Metals Exclusion applies, and thus that the condenser coils were made of one of the Excluded Metals; it does not bear the burden of proving beyond a reasonable doubt exactly which of the Excluded Metals the coils were made of. Therefore, the Court finds that there is no genuine issue of material fact regarding the composition of the coils that would preclude summary judgment.

### ii.    Intent of the Thieves

Plaintiff argues that it is "undisputed that the thieves were not seeking precious metals, but refrigerant, as the value of the refrigerant taken was much greater than any scrap copper or aluminum that was taken."[164] Plaintiff contends that "[e]very witness deposed to date has unequivocally stated that not only were the condenser coils were missing [sic], but also the liquid refrigerant contained therein."[165] Plaintiff states that at the time of loss, the refrigerant cost about $15 to $20 per pound and that each unit contained 25 to 50 pounds of refrigerant.[166] Thus, according to Plaintiff, the value of the refrigerant taken ranged from $375 to $1,000, depending on the size of the units.[167] By contrast, Celebration Church argues, the scrap value of copper was about $2.00 per linear foot, and about 100 linear feet of copper was estimated to have been taken from each unit—or

---

[163] *Little*, 37 F.3d at 1075.

[164] Rec. Doc. 28-1 at p. 11.

[165] Rec. Doc. 48 at p. 11.

[166] *Id.* at p. 12.

[167] *Id.*

33

about $200 of scrap metal per unit.[168] Because the value of the refrigerant was higher than that of the copper, Plaintiff contends, it must have been the true aim of the thieves.[169]

After a review of the evidence submitted, the Court finds that the evidence supports some of Plaintiff's claim—no one appears to dispute that refrigerant was at some point contained within the coils that went missing.[170] Plaintiff, however, then argues that "the theft undisputedly included liquid refrigerant," and that "indeed, the evidence was undisputed that the thieves were not seeking precious metals, but refrigerant, as the value of the refrigerant taken was much greater than any scrap copper or aluminum that was taken."[171] UNIC, however, quite clearly vehemently disputes these claims, and Plaintiff cites no support for such a broad statement as to the thieves' intent besides the price of refrigerant. The witnesses cited by Plaintiff acknowledged at most, that liquid refrigerant was *missing*—in other words, that liquid refrigerant was part of the "loss or damage caused by or resulting from" the theft of an Excluded Metal. None, however, claimed that liquid refrigerant was the aim of the theft, stating only that some refrigerant would have been contained in the stolen coils.

In fact, Rory Scallan, a mechanical contractor specializing in air conditioners, is quoted by Defendant stating that the refrigerant could *not* have been taken with the stolen condenser coils,

---

[168] *Id.*

[169] *Id.*

[170] *See* Dep. of Kenny Peffer, Rec. Doc. 28-3 at pp. 6–7 ("Q: So would it also be reasonable to state that, in addition to the coils being missing, there was also refrigerant missing? A: Yes, ma'am."); Dep. of Rory M. Scallan, Rec. Doc. 28-4 at p. 7 (Q: . . . Now, the coils that were missing from these photos, did they contain freon refrigerant? A: Yes. Q: So then the freon and refrigerant would be missing from all seven units as well on the date of loss? A: Yes, ma'am."); Dep. of Jonathan D. Kimball, Rec. Doc. 30-1 at p. 11 ("Q: . . . [W]ere you ever advised that the coils contained Freon or refrigerant, some sort of refrigerant? A: I know the coils do.").

[171] Rec. Doc. 48 at p. 12.

because it would have evaporated.[172] Plaintiff does not rebut Scallan's assertion with any evidence, but simply calls Defendant's arguments concerning this point "specious."[173] Although Plaintiff's expert speculated that "[i]f a simple and timely method for removing R-22 refrigerant and storing that refrigerant was available, it is plausible that vandals would steal the refrigerant rather than destroying the condensing unit for the scrapped value of the copper and aluminum in the condenser coil,"[174] Celebration Church presents no evidence that such a method existed or was utilized by the thieves in question in order to raise a genuine, disputed issue of material fact regarding the purpose of the theft. To withstand a motion for summary judgment, "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support

---

[172] Rec. Doc. 38 at p. 10. Scallan testified as follows:

Q.   [W]hen you took the coils, any liquid would have gone with the coils, correct?
A.   No, because freon can change from a liquid to a gas and relieve the system. I wouldn't have a gas in it – I mean a liquid in it. . . .
Q.   So, then, when they released it, would any liquid have been on the ground at the time of release?
A.   No, no, there wouldn't, because it's freon. I mean, it only stays a liquid under pressure.
Q.   So if you release the pressure --
A.   It turns back to a gas and evaporates into the atmosphere and burns up the ozone. . . .
Q:   Just to sum up your view of things as an air conditioning man, it would have been necessary to in some way cut the condenser coils in order to remove them and take them away from the air conditioning unit, correct?
A.   Yes. . . .
Q.   So, in order for a thief to steal a condenser unit for the value of the freon contained within it, there would need to be some kind of recovery process, isn't that true?
A.   Yes.
Q.   . . . [H]ow do you go about recovering freon?
A.   . . . You would need a recovery unit and a cylinder to put it in. Once you put it in, you could move it under pressure from a liquid as a liquid, as long as you're doing it under pressure.
Q.   So the thieves would necessarily have had some equipment with them up on the roof in order to go through this process, correct?
A.   Yes.
Q.   And do you have any idea how much time it would take to recover the freon from, say, a 15 ton air conditioning system?
A.   Approximately an hour.

Rec. Doc. 35-6 at pp. 5–8.

[173] Rec. Doc. 50 at p. 3.

[174] Rec. Doc. 28-5 at p. 4.

or defeat a motion for summary judgment."[175] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[176] Where the evidence suggests that any attempt to steal liquid refrigerant would require a complex and time-consuming process, Plaintiff may not rest solely on the speculation that such a method could have been used to recover liquid refrigerant when the undisputed evidence otherwise shows that Excluded Metals, the theft of which is not covered by UNIC's Policy, were certainly stolen.

Furthermore, Plaintiff asserts that "[w]hether taken or disposed, the missing items undisputedly included refrigerant, and the Precious Metals Exclusion clearly does not apply to liquid (or gas)."[177] This argument, however, flatly contradicts Plaintiff's claim that the liquid refrigerant must have been the aim of the theft because its value exceeded the value of any copper taken.[178] Plaintiff presents no evidence, other than its price, that liquid refrigerant was the aim of the theft, and argues that therefore copper, which is cheaper, could not have been the true purpose of the theft. Plaintiff then turns around and argues, however, that it is irrelevant whether any liquid refrigerant was actually taken—only whether it was lost. Such an interpretation flies in the face of the clear language of the insurance policy, which aims to cover precisely the kind of expensive damage that may be inflicted upon machinery or equipment in the pursuit of scrap metal, and not just the price of the scrap metal itself.

---

[175] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[176] *See, e.g.*, *Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[177] *Id.*

[178] *See* Rec. Doc. 48 at p. 12.

The Court is unpersuaded by Celebration Church's other attempts to raise doubt concerning the Precious Metals Exclusion. For example, Plaintiff argues that the "evidence is undisputed that the loss consisted of equipment because significant amounts of copper was left behind by the thieves, and the copper left behind far exceeded the value of any scrap copper taken with the coils."[179] This argument, however, is besides the point; the Precious Metals Exclusion does not apply to the "effective and total theft of [Excluded Metals]"—it applies to the theft or attempted theft of Excluded Metals, regardless of the total amount of such metals taken, or any left behind. If the Exclusion were not triggered unless the theft was a total success, the "attempted theft" language would have no meaning. Similarly, although UNIC does not appear to contest that the condenser coils constituted "equipment,"[180] the Precious Metals Exclusion specifically references equipment and states that any loss or damage caused by the theft or attempted theft of Excluded Metals that "are part of any machinery or equipment attached or connected to buildings or structures" will not be paid for by UNIC. Celebration Church has pointed to no evidence, other than the definition of condenser coils as "equipment," to rebut Defendant's proffered evidence that thieves stole Excluded Metals contained within machinery or equipment—a form of loss or damage explicitly excluded by the Policy. Celebration Church's arguments regarding liquid refrigerant and equipment, however, do not amount to genuine, disputed issues of material fact such as would preclude summary judgment in favor of UNIC on the issue of coverage.[181]

---

[179] *Id.* at p. 15.

[180] *See* Rec. Doc. 52 at p. 4.

[181] Although UNIC also seeks summary judgment regarding Plaintiff's claims of "bad faith" against Defendant, because the Court finds as a matter of law that UNIC was not required to provide coverage under the Policy, it need not reach UNIC's arguments regarding bad faith.

### V. Conclusion

For the reasons stated above, the Court finds that Plaintiff has failed to meet its burden to show either that the contractual language was ambiguous or that, as a matter of law, it required UNIC to cover the costs of the lost liquid refrigerant or other damage incurred as a result of the theft of condensers contained within seven air conditioning units atop Celebration Church. Plaintiff has also failed to point to genuine, disputed issues of material fact to preclude summary judgment in favor of UNIC. Accordingly,

**IT IS HEREBY ORDERED** that UNIC's "Motion for Summary Judgment"[182] is **GRANTED.**

**IT IS FURTHER ORDERED** that Celebration Church's  "Motion for Partial Summary Judgment on the Issue of Coverage"[183] is **DENIED.**

**NEW ORLEANS, LOUISIANA**, this 22nd day of December, 2015.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[182] Rec. Doc. 35.

[183] Rec. Doc. 28.

38